1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  ALEXANDRA SHEPARD (CABN 205143)
   Special Assistant United States Attorney
5
   DAVID WARD (CABN 239504)
6  Assistant United States Attorney

7       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
8       Telephone: (415) 436-7443
        FAX: (415) 436-7234
9       Alexandra.Shepard2@usdoj.gov
        David.Ward@usdoj.gov
10
   Attorneys for United States of America
11
                          UNITED STATES DISTRICT COURT
12
                       NORTHERN DISTRICT OF CALIFORNIA
13
                            SAN FRANCISCO DIVISION
14

15  UNITED STATES OF AMERICA,            )  NO. 18-CR-00392 CRB
                                         )
16          Plaintiff,                   )  **UNITED STATES'S OPPOSITION TO MOTION**
                                         )  **TO SUPPRESS**
17     v.                                )
                                         )  Hearing: January 9, 2020
18  NICHOLAS KING BEYER,                 )  Time:  2:00 p.m.
                                         )
19          Defendant.                   )
                                         )
20

21

22

23

24

25

26

27

28

US' OPP TO MOT. TO SUPPRESS
18-CR-00392 CRB

1    **I.      INTRODUCTION**

2           Defendant Nicholas King Beyer was indicted for making false statements to the Federal Aviation

3    Administration (FAA) on applications he made for an FAA medical certificate, which is required by law

4    to safely operate an aircraft.  He twice affirmatively denied having any mental health condition despite

5    being diagnosed with Major Depressive Disorder, and twice failed to disclose that one of the reasons he

6    received disability benefits from the U.S. Department of Veterans Affairs (VA) was this depression. As

7    part of its investigation, the government obtained a court order under the All Writs Act for Defendant's

8    medical and other records from the VA.  Defendant now moves to suppress these records.

9           Defendant's motion fails for four reasons.  First, Defendant's records were appropriately disclosed

10   by the VA to the U.S. Attorney's Office.  Second, Defendant did not have a reasonable expectation of

11   privacy in the medical records he disclosed to the VA.  Third, law enforcement relied in good faith on the

12   All Writs Act Order issued by a magistrate judge.  Finally, suppression is not an appropriate remedy.

13          Defendant sought disability benefits from the VA for his service-connected major depression.  He

14   then deliberately hid his diagnosis of Major Depressive Disorder from the FAA when he sought a pilot's

15   license.  Now he seeks to hide his medical records too.  His motion should be denied.

16   **II.     STATEMENT OF FACTS**

17          **A.      Application Process for VA Disability Benefits**

18          The Department of Veteran's Affairs, though one agency, is divided into three organizations.  The

19   Veterans Health Administration is in charge of providing medical treatment to veterans and their families.

20   The Veterans Benefits Administration is separate from the healthcare organization and is responsible for,

21   among other things, providing disability benefits to veterans.[1] *See* Declaration of Nicholas Sanzone in

22   Support of Government's Opposition to Motion to Suppress (Sanzone Decl.), ¶ 2.

23          Veterans, including Defendant, apply for disability benefits from the VA by completing a VA form

24   which requires them to identify their claimed disabilities and when the disabilities began.  Sanzone Decl.,

25   Ex. A.  The form requires the applicant to authorize the release of information to the VA by any person

26   or entity, including any government agency, and to "waive any privilege which makes this information

27

28
_____
            [1] The third organization is the National Cemetery Administration.  Sanzone Decl., ¶ 2.

US' OPP TO MOT. TO SUPPRESS                    1
18-CR-00392 CRB

1   confidential." *Id*.  As part of the disability benefits application process, the VA requires the applicant to

2   submit his service treatment records (his medical records) and any medical evidence related to the claimed

3   illness or injury.  *See* Sanzone Decl., Ex. B.[2]

4      The VA then arranges, as needed, for a physical exam of the applicant, known as Compensation

5   & Pension (or C&P) exam.  Sanzone Decl., ¶ 5.  The C&P exam is conducted by a healthcare

6   professional—in the case of Defendant's claim for disability benefits for depression, a psychiatrist—who

7   assesses the applicant's disability, determines if the disability is service connected, and transmits his or

8   her report to the VBA for claims processing.  *Id*. at ¶¶ 5-6.  As the VA website notes, a C&P exam is not

9   like a regular medical appointment between a doctor and a patient: "The examiner will only perform a

10  medical review to identify or confirm any disabilities shared in your claim application.  They will record

11  the findings and provide them to a VBA claims processor to complete the claim process."[3]  Further,

12
13  > [t]he examiner's job is to review your medical records related to your disability
> claim, including the claim file, also known as your c-file/e-file. The c-file typically
> includes *medical treatment records from Department of Defense (DoD)*, your DoD
> personnel records, *treatment records from your health care providers* and any other
14  > documents submitted.[4]

15  (Emphasis added.)  After the C&P exams are completed, the VA makes a decision about the applicant's

16  claimed disability based on the veteran's medical records from their time on active duty, the results of any

17  C&P exam(s), and any additional information provided by the veteran.  *See* Sanzone Decl., Ex. C.

18     **B.**  **The VA's Privacy Policies**

19     The VA's privacy policy is described in a Notice of Privacy Practices (NOPP).  Sanzone Decl.,

20  Ex. D.  Every time the VA revises the NOPP, the VA sends veterans a copy of the new policy.  Sanzone

21  Decl., ¶ 9.  Veterans are not required to sign an acknowledgement form when they receive a copy of the

22  new policy.  *Id*.  The NOPP in effect at the time Defendant enrolled in the VA for medical care identified

23  a number of reasons why the VA may disclose a veteran's healthcare information without his

24  authorization.  Those reasons include responding to court orders, and "[r]esponding to a specific request

25  when in pursuit of a focused civil or criminal law enforcement investigation."  Sanzone Decl., Ex. D.

26

27     [2] *See also* https://www.va.gov/disability/how-to-file-claim/evidence-needed/.

   [3] https://www.benefits.va.gov/COMPENSATION/DOCS/CLAIMEXAM-FAQ.PDF#.

28     [4] *Id*.

1          **C.      The Government's Request for Defendant's VA Records**

2          As part of the government's investigation into whether the Defendant made false statements to the

3   FAA about his Major Depressive Disorder diagnosis, the United States Attorney's Office submitted an *Ex*

4   *Parte* Application For an Order Pursuant to 38 U.S.C. § 7332 and the 28 U.S.C. § 1651 (the All Writs

5   Act). *See* Declaration of Alexandra Shepard In Support of Government's Opposition to Defendant's

6   Motion to Suppress (Shepard Decl.), Ex. E.  In the application, the government requested "any and all

7   patient records or information relating to the VA Office of Inspector General's Investigation" of

8   Defendant.  The government described the types of records relating to medical conditions and disability

9   benefits maintained by the VA, and explained how comparing an individual's VA file with their

10  application for an airman medical certificate can reveal false statements. *Id.*  The government advised the

11  Court that "a preliminary investigation into Nicholas King Beyer has revealed that Beyer may have made

12  material false statements regarding his diagnosis of mental illness(es) and the grounds for his receipt of

13  disability payments on an airman medical certificate in application in 2016." *Id.*  The government

14  explained that "a full determination of whether the statements he made on his airman medical certificate

15  application violate a federal criminal statute cannot be made, however, without the full VA patient records

16  and information regarding Beyer." *Id.*  The Honorable Maria-Elena James signed the order on July 12,

17  2018.  Shepard Decl., Ex. F.

18  **III.    ARGUMENT**

19         **A.      Defendant's Records Were Appropriately Disclosed**

20         Defendant fails to show why the Fourth Amendment governs disclosure in this case.  The VA was

21  permitted by statute to voluntarily turn over its own records to law enforcement so that law enforcement

22  could conduct an investigation into Defendant's false statements.  While the government sought a court

23  order under the All Writs Act in an abundance of caution, it could have obtained the records from the VA

24  without one.

25  ///

26  ///

27  ///

28

1   Generally, records pertaining to requests for VA benefits are protected from disclosure. *See* 38

2   U.S.C. § 5701(a):

3       All files, records, reports, and other papers and documents pertaining to any claim
        under any of the laws administered by the Secretary and the names and addresses of
4       present or former members of the Armed Forces, and their dependents, in the
        possession of the Department shall be confidential and privileged, and no disclosure
5       thereof shall be made except as provided in this section.

6   (Emphasis added.)

7   As noted, the statute carves out exceptions, and in this case disclosure was authorized under more

8   than one exception.  First, 38 U.S.C. § 5701(b)(3) provides that "[t]he Secretary shall make disclosure of

9   such files, records, reports, and other papers and documents ... when required by any department or other

10  agency of the United States Government."  Here, the Department of Justice required Defendant's records

11  to conduct a criminal investigation.   Second, 38 U.S.C. § 5701(b)(5) provides that records shall be

12  disclosed "[i]n any suit or other judicial proceeding when in the judgment of the Secretary such disclosure

13  is deemed necessary and proper."  Accordingly, the VA was permitted to exercise its discretion to disclose

14  Defendant's records even without seeking a court order.

15  However, certain medical information is entitled to additional protection.  Specifically, 38 U.S.C.

16  § 7332(a)(1) provides:

17      Records of the identity, diagnosis, prognosis, or treatment of any patient or subject
        which are maintained in connection with the performance of any program or activity
18      (including education, training, treatment, rehabilitation, or research) relating to drug
        abuse, alcoholism or alcohol abuse, infection with the human immunodeficiency
19      virus, or sickle cell anemia which is carried out by or for the Department under this
        title shall, except as provided in subsections (e) and (f), be confidential.
20

21  While most of the information in Defendant's VA medical file could already be disclosed under the two

22  statutory exceptions discussed above, protection of § 7332 information contained in Defendant's file—if

23  there was any—would require review and redaction.  It was for that reason—to ensure protection of any

24  § 7332 information—that the government sought an order from a magistrate judge under the All Writs

25  Act to obtain the entire file.

26  Contrary to Defendant's claims, the VA's disclosure of Defendant's medical records was

27  appropriate under § 7332.  Subsection 7332(a)(1) states that the protected information can be disclosed

28  "under the circumstances expressly authorized under subsection (b)."  Subsection 7332(b)(2)(D), in turn,

1  provides that disclosure is allowed "[i]f authorized by an appropriate order of a court of competent

2  jurisdiction granted after application showing good cause therefor."

3       Here, the government properly used an application under the All Writs Act to obtain an order from

4  a federal magistrate judge allowing disclosure by the VA.   "The power conferred by the [All Writs] Act

5  extends, under appropriate circumstances, to persons who, though not parties to the original action or

6  engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper

7  administration of justice ... and encompasses even those who have not taken any affirmative action to

8  hinder justice." *United States v. New York Tel. Co.,* 434 U.S. 159, 174 (1977).  Accordingly, the magistrate

9  judge had the authority under the All Writs Act to order the VA to disclose Defendant's records for the

10 legitimate law enforcement purpose of a potential prosecution.

11      In ordering the release of Defendant's records to the VA, the magistrate judge properly weighed

12 the public interest and the need for disclosure against the potential injury to Defendant.  Indeed, in another

13 case concerning the disclosure of medical information, the Ninth Circuit affirmed that there was no Fourth

14 Amendment violation where a state employee was required to undergo an independent medical

15 examination to confirm whether she was able to work.  *See Yin v. State of California.*, 95 F.3d 864, 873

16 (9th Cir. 1996).  In that case, the Ninth Circuit found against the employee, reasoning that "[b]alancing

17 [the employee]'s diminished expectations of privacy against the state's interest in maintaining a

18 productive and stable work force, we conclude that the state's request that Yin submit to an independent

19 medical examination is reasonable and therefore constitutional." *Id.*  Likewise, the magistrate judge here

20 balanced the "potential for injury to the patient, to the physician-patient relationship, and to any treatment

21 services" against the public interest in ensuring "the safety of the pilot, his passengers, and the public"

22 and determined that there was good cause for disclosure.  Shepard Decl., Ex. A.

23      Accordingly, Defendant's challenges to the disclosure process in this case are unavailing.

24   **B.    Defendant Did Not Have a Reasonable Expectation of Privacy**

25      Defendant's Motion should also be denied because Defendant lacked a reasonable and legitimate

26 expectation of privacy in his medical records under the circumstances presented here.  Defendant bears

27 the burden of demonstrating that he had an objectively reasonable expectation of privacy. *United States*

28 *v. Lingenfelter*, 997 F.2d 632, 636 (9th Cir. 1993).  "To invoke the protections of the Fourth Amendment,

1    a person must ... demonstrate a subjective expectation that his activities would be private, and he must

2    show that his expectation was one that society is prepared to recognize as reasonable." *United States v.*

3    *Bautista*, 362 F.3d 584, 589 (9th Cir. 2004) (citations omitted).  Defendant can do neither.

4         First, Defendant did not have a reasonable expectation of privacy because he was informed that

5    his information could be shared with law enforcement without his permission.  The VA's privacy notice

6    informed Defendant that his information could be shared with law enforcement without his authorization,

7    including when (1) "[r]esponding to a court order," and (2) when "[r]esponding to a specific request when

8    in pursuit of a focused civil or criminal law enforcement investigation."  Sanzone Decl., Ex. D.  Both of

9    those scenarios apply here.  The VA produced records relating to Defendant's medical history to law

10   enforcement in response to an Order under the All Writs Act.  This Order was sought in connection with

11   a criminal law enforcement investigation by the VA Office of Inspector General and FAA Office of

12   Inspector General.  Further, the criminal investigation arose because the government believed, based on

13   its investigation, that Defendant had lied to the FAA about his mental health diagnosis by the VA and the

14   VA benefits he was receiving for that diagnosis in order to fraudulently obtain an airman's medical

15   certificate.  Accordingly, Defendant did not have a reasonable expectation of privacy because he was

16   expressly informed that his information could be disclosed under circumstances like those present in this

17   case.

18        Second, Defendant disclosed his medical record information to the VA, a third party, for the

19   purpose of securing disability benefits.  "This Court has held repeatedly that the Fourth Amendment does

20   not prohibit the obtaining of information revealed to a third party and conveyed by him to Government

21   authorities, even if the information is revealed on the assumption that it will be used only for a limited

22   purpose and the confidence placed in the third party will not be betrayed."  *United States v. Miller*, 425

23   U.S. 435, 443 (1976); *see also Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("This Court consistently

24   has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to

25   third parties.").[5]  In his motion, Defendant conflates his privacy interest in any medical treatment he might

26

27        [5] Defendant cites a recent case, *Carpenter v. United States*, 138 S.Ct. 2206 (2018), to suggest
     that the statutory "good cause" standard falls short of the Fourth Amendment's requirements.  *Carpenter*
     has no bearing here.  The question presented in *Carpenter* was whether the government could obtain,

28   without a search warrant, cell-site location information ("CSLI") data collected by service providers.
     The central concern in *Carpenter* was the "tireless and absolute surveillance" of cell phone users'

1   have received at the VA with his privacy interest in medical treatment records that he disclosed to the VA

2   in order to receive disability benefits.  But Defendant did more than just seek medical treatment at the VA;

3   he affirmatively disclosed his Navy medical records to the VA, a third party, to obtain disability benefits.

4   He repeatedly acknowledges in his Motion that he knowingly shared his medical information to the VA

5   for both purposes:

6       • "Mr. Beyer understood at the time that he was submitting this information
          confidentially to the VA both for the purpose of receiving medical care, *and in order*
7         *to receive potential disability benefits…*";

8       • "After Mr. Beyer registered, the VA scheduled a number of doctor appointments for
          him…He attended them and understood that they were for the purpose of providing
9         him with medical care *and assessing his eligibility for potential disability benefits*."

10      • "He did not understand or expect that his Naval medical records would be obtained
          or disclosed by the VA for purposes other than providing him with medical care, *and*
11        *assessing him for benefits and services eligibility*."

12  *See* Def.'s Mot. at 2 (emphasis added).

13      The District of Montana recently held, in a similar case regarding VA disability benefits, that a

14  veteran did not have a reasonable privacy interest in the contents of a C&P exam.  *See United States v.*

15  *Hughes*, 2019 WL 4740256, at *4 (D. Mont. Sept. 27, 2019).  In *Hughes*, a veteran voluntarily participated

16  in a C&P exam for the purpose of re-evaluating his VA disability benefits, which the VA informed him

17  were going to be reduced because his disability did not appear to be as severe as he claimed.  The exam

18  was recorded by the VA Office of Inspector General, which was investigating Hughes for benefits fraud.

19  Hughes moved to suppress the recording on the grounds that the government should have obtained a

20  warrant because he had a reasonable expectation of privacy in the exam.  The Court found that Hughes

21  should have expected the person conducting his exam to share the results with people in the VA "who

22  were not involved in providing medical treatment" to him.  *Id.* at *5.   The Court noted that "a defendant

23

24  locations made possible by CSLI. 138 S. Ct. at 2218. The Supreme Court has historically "shown special
25  solicitude for location information in the third-party context." Id. at 2219–20. *Carpenter* held that, under
    these "novel circumstances," the third-party doctrine did not apply to the CSLI in that case, determined
26  that Carpenter had a reasonable expectation of privacy in the CSLI, and required a search warrant rather
    than a lesser type of process to obtain CSLI.  *Id.* at 2217, 2218, and 2219–20.  The Supreme Court
27  stressed in *Carpenter* that its "decision today is a narrow one" and that "[w]e do not disturb the
    application of Smith and Miller…" and their line of third-party doctrine cases which relate to a person's
28  expectation of privacy—or lack thereof—in information voluntarily provided to a third party.  *Id.* at
    2220.

1    generally has no privacy interest in that which he voluntarily reveals to a government agent," in this case

2    a VA nurse. *Id*. at \*4 (*quoting United States v. Wahchumwah*, 710 F.3d 862, 867 (9th Cir. 2013)).  The

3    *Hughes* court further concluded that "even if Hughes had displayed a subjective expectation of privacy,

4    that expectation would, under the circumstances, be unreasonable.  An ordinary person in Hughes's shoes

5    would not have expected communications made to a medical provider during a C&P exam to be kept

6    private or to be used only for medical care and treatment." *Id.* at \*5.

7          The same reasoning applies here. Because Defendant, like Hughes, disclosed his medical

8    information to the VA for the purpose of getting disability benefits, he cannot now claim that he has a

9    reasonable expectation of privacy in those records.  Accordingly, Defendant cannot meet his burden in

10   demonstrating a reasonable and legitimate expectation of privacy.

11                 **C.       Law Enforcement Relied in Good Faith on the All Writs Act Order**

12         No Fourth Amendment violation occurred here.  But even if it did, the good faith exception to the

13   exclusionary rule would apply. *See United States v. Leon*, 468 U.S. 897 (1984).  This exception applies

14   where law enforcement officers obtain evidence with an objectively reasonable belief that they were

15   authorized by law to do so. *See Leon*, 468 U.S. at 934 n.23 ("[O]ur good-faith inquiry is confined to the

16   objectively ascertainable question whether a reasonably well trained officer would have known that the

17   search was illegal despite the magistrate's authorization."); *see also Massachusetts v. Sheppard*, 468 U.S.

18   981, 989-90 (1984) ("we refuse to rule that an officer is required to disbelieve a judge who has just advised

19   him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has

20   requested."); *cf. Kerns v. Bader*, 663 F.3d 1173, 1184-85 (10th Cir. 2011) (Officer can't be held liable

21   under the Fourth and Fourteenth Amendments for requesting defendant's medical records from a VA

22   hospital because the "the fact that a live (and heated) debate exists on them is more than enough to preclude

23   us from saying that the Sheriff violated clearly established law when he sought records held by a third

24   party care provider").  The Supreme Court acknowledged that the good faith exception will not apply in

25   certain circumstances, such as when a warrant is so facially deficient that the executing officers "cannot

26   reasonably presume it to be valid." *Id.* at 923.  Those circumstances are not present here.  In this case, the

27   magistrate judge authorized the VA to disclose its records to counsel for the United States and others

28   involved in the criminal investigation pursuant to a statute, 38 U.S.C. § 7332.

1

**D.      Suppression is Not the Appropriate Remedy**

2       Finally, even if Defendant is correct that the government should have sought a warrant, Fourth

3   Amendment violations do not automatically trigger suppression, which is an "extreme sanction," *Leon*,

4   468 U.S. at 926, to be used only as a "'last resort,'" and only to deter flagrant or intentional police

5   misconduct. *Herring v. United States*, 555 U.S. 135, 140 (2009) (quoting *Hudson v. Michigan*, 547 U.S.

6   586, 591 (2006)).  The government did not attempt to circumvent judicial review of its actions or to

7   conceal its plans from the Court; to the contrary, the government sought a court order even though, in all

8   likelihood, one was not required. *See Herring*, 555 U.S. at 144 ("To trigger the exclusionary rule, police

9   conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently

10  culpable that such deterrence is worth the price paid by the justice system.").  Accordingly, there is no

11  misconduct that requires deterrence in the form of suppression.

12  **IV.      CONCLUSION**

13       For the foregoing reasons, the defendant's motion to suppress should be denied.

14  DATED:  December 30, 2019                                    Respectfully submitted,

15                                                              DAVID L. ANDERSON
                                                                United States Attorney
16

17

18                                                                  /s/

                                                                ALEXANDRA J. SHEPARD
19                                                              Special Assistant United States Attorney

20                                                                  /s/

21                                                              DAVID WARD
                                                                Assistant United States Attorney

22

23

24

25

26

27

28