IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>    Plaintiff,<br><br>    v.<br><br>NICHOLAS KING BEYER,<br><br>    Defendant. | Case No. 18-cr-00392-CRB-1<br><br>**ORDER EXCLUDING EXPERT TESTIMONY** |

Nicholas Beyer stands accused of making false statements and concealing material facts from the Federal Aviation Administration, in violation of 18 U.S.C. § 1001(a)(1) and (2). Indictment (dkt. 1). The charges arise from Beyer's answers on Federal Aviation Administration Form 8500-8. Id. On two separate occasions, Beyer answered the question "Have you ever in your life been diagnosed with, had, or do you presently have . . . [m]ental disorders of any sort; depression, anxiety, etc." in the negative. Id.; see also Trial Ex. 2; Trial Ex. 5. The Government alleges this was false, because Beyer had previously been diagnosed with major depressive disorder by the Department of Veterans Affairs. Mot. (dkt. 69) at 5. And on the same form, Beyer twice failed to disclose that he was receiving disability for major depressive disorder when explaining why he was receiving medical disability benefits from the VA. Indictment.

Prior to trial, the Government moved to exclude the testimony of two proposed expert witnesses, Dr. Cheryl-Grace Patty and Dr. Charles Dennison.[1] See generally Mot. That motion is granted for the following reasons.

---

[1] Beyer was convicted on all counts after a bench trial on January 14, 2020. See Docket 104. The Court granted the Government's motion to exclude Beyer's experts prior to trial. This Order explains the reasoning underlying that decision.

## I. DR. CHERYL-GRACE PATTY

Dr. Patty would have testified that the VA over-diagnosed Beyer with major depressive disorder and that the VA often over-diagnosed veterans with disabilities. Mot. at 3–5. As an initial matter, it is far from clear that whether Beyer is or ever was depressed is relevant to the charges in this case. Form 8500-8 asked whether Beyer had ever been diagnosed with depression. Whether Beyer was actually depressed does not change the fact that he had received a diagnosis of major depressive disorder. The accuracy of his diagnosis does not change the falsity of his answer. Similarly, whether Beyer was actually depressed does not change the fact that the VA's diagnosis was a basis for his disability benefits.

Beyer argues that Dr. Patty's testimony is nevertheless relevant, because "[i]f Mr. Beyer was aware he was misdiagnosed with major depressive disorder, and never in fact had that condition, then the jury—and should—acquit him in view of the government's failure to prove mens rea." Opp'n at 3. This theory requires the jury to accept that Beyer interpreted the question "[h]ave you ever in your life been diagnosed with . . . [m]ental disorders of any sort; depression, anxiety, etc." to really be asking "have you ever in your life been correctly diagnosed with . . . [m]ental disorders of any sort; depression, anxiety, etc." Reading the word "correctly" into the question's plain language is wholly unsupported by Form 8500-8's plain language.

But even assuming that a reasonable fact-finder could have been persuaded that Beyer adopted this eye-raising interpretation of Form 8500-8's medical history questions, the chain of inferences necessary to make Dr. Patty's diagnosis relevant to Beyer's mens rea is still far too attenuated to overcome the potential confusion and prejudice it would create. Beyer's theory is that he did not have the requisite mens rea because he believed the form was really asking whether he had ever been correctly diagnosed with depression, and he knew his diagnosis was erroneous. Opp'n at 3. Dr. Patty's testimony ostensibly supports this theory because she believes Beyer was not depressed. Mot. at 3–5. She reached this conclusion after Beyer made the false statements at issue in this case, and

based only on Beyer's naval medical records and her own experience. Mot. at 4. Dr. Patty's testimony is of limited usefulness in determining whether Beyer subjectively believed he was depressed despite his VA diagnosis, an issue which, as discussed above, may or may not be relevant at all.

On the other hand, this testimony poses a significant danger of confusion and prejudice. Testimony regarding the accuracy of Beyer's depression diagnosis would distract the factfinder with an issue that is, at most, tangential to the case. (Remember that the accuracy of Beyer's diagnosis is relevant only insofar as it supports his claim that he subjectively believed he was misdiagnosed, which is itself relevant only if one accepts that he also believed Form 8500-8 was asking whether he had been accurately diagnosed with a mental condition.) Dr. Patty's testimony also threatens to prejudice the factfinder against the VA by impugning its diagnoses in general, even though the accuracy of the specific diagnosis in this case is itself of limited relevance. Because the risk of unfair prejudice and confusion substantially outweighs the limited probative value of Dr. Patty's testimony, the Government's motion to exclude is granted. Fed. R. Evid. 403.

## II. DR. CHARLES DENNISON

Dr. Dennison would have testified "about the [Aviation Medical Examiner] examination process," Mot. at 6–7, and specifically about "how AMEs address issues of mental health disclosures by airman applicants," "any general flaws in how the FAA instructs AMEs to address mental health issues," and how mental health conditions are evaluated and handled in the examination process, Opp'n at 3–4. Beyer argues that this evidence goes to the materiality of the alleged false statements and concealed facts, and rebuts the Government's expert testimony. Id. at 4. He argues, for example, that "[t]he FAA's failure to establish clear standards or require relevant training directly undermines the government's own expert's proposed testimony that mental health disclosures are important to public safety and material to the FAA's activities and decision making processes." Id.

But Beyer concedes that to show materiality, the Government only had to show that

the false statements or concealed facts "had a natural tendency to influence, or [were] capable of influencing, the agency's decisions or activities." Id.; see also Joint Proposed Jury Instructions (dkt. 62) at 43–44. The question is not whether the FAA would have made the appropriate decisions or taken the appropriate actions in response to Beyer's diagnosis with a mental health condition. It is whether disclosing that diagnosis would have influenced (or tended to influence) the FAA's actions or decisions at all. Dr. Dennison would not (and likely could not) testify that the FAA's decisions and activities are not influenced at all by a previous diagnosis of a mental health condition. See Mot. at 6–7. Instead, he would criticize the FAA's reaction to such a disclosure. Id. Such criticism simply does not make any fact tending to prove the materiality of the false statements and concealed facts more or less probable. Dr. Dennison's testimony is therefore excluded under Federal Rule of Evidence 401.[2]

For the foregoing reasons, the motion to exclude is granted.

**IT IS SO ORDERED.**

Dated: January 15, 2020

CHARLES R. BREYER
United States District Judge

---

[2] At the bench trial Beyer argued that the Government opened the door to the excluded testimony. This is not the case, because the Government's experts did not delve into the issues this Order concludes to be irrelevant or more prejudicial than probative. To the extent their testimony touched on those issues, it was only to offer necessary background and context for evidence directly relevant to the case.

4